fully acquainted with the situation of these debts, at the time of the negotiation for the purchase; and the bank has not interfered or changed the condition or character of them since. There was no guarantee of the amounts due; and as the demands had accrued at the Burlington office, where two of the defendants were directors, they, it is to be presumed, knew more about them, in every respect, than the officers of the parent bank.

6. The proof is sufficient to show that the purchase was made by the defendants from the bank chartered by the State of Pennsylvania, and not from the old bank.

For these reasons, I think there should be a new trial, with costs to abide the event.

New trial granted.

This decision was affirmed by the supreme court at the December term, 1851. (See [Lyman v. Bank of U. S.] 12 How. [53 U. S. 225.]

[NOTE. This judgment was affirmed on writ of error by the supreme court, Mr. Justice Nelson delivering the opinion, in which it was held that the bank having become insolvent, and having made an assignment of its effects to trustees for the benefit of its creditors, it should be allowed to sue in its own name for the benefit of the creditors; the case being the same as if the law had permitted the suit to be brought, and the same had been brought in the name of such trustees.

[Although the bank had endorsed a note among its other assets to its trustees, yet, under the circumstances, it could maintain a suit upon the note, because, where the party who is a holder of a note has transferred it for the purposes of collection, and the same is not paid, but is found in the possession of the original holder, he can recover, as he is remitted to his original rights notwithstanding the endorsement, and if the note is not paid the plaintiff may give it up, and recover upon the original consideration.

[Before the defendants became indebted to the bank, the bank had made a compromise of a certain claim, which, among others, was the subject of a sale and purchase by the defendants. Two of the defendants had knowledge of the conditions of this compromise, and their knowledge must be considered as extending to the other defendants. It was a question of the jury to determine what the defendants purchased. Lyman v. Bank of U. S., 12 How. (53 U. S.) 225.]

## Case No. 925.

### BANK OF THE UNITED STATES v. MAC-DONALD.

[4 Cranch, C. C. 624.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

NEGOTIABLE INSTRUMENTS—INDORSERS—NOTICE OF DISHONOR—DISCHARGE OF INDORSER.

1. In order to prove notice to an indorser who is a clerk of a printing-office, and who has a separate room in which he attends daily to the business of the office, it is competent for the plaintiff to show, by evidence, that a written notice was left at such room, although the indorser was not there at the time.

2. After a note is dishonored, and due notice has been given to all the indorsers, the defend-

[1] [Reported by Hon. William Cranch, Chief Judge.]

ant, the last indorser, is not discharged by the holders taking a new note at 60 days, from a prior indorser for the balance due upon the old note, and giving time to such prior indorser without the consent of the defendant.

[At law.] Assumpsit [by the Bank of the United States] against [Stephen Macdonald] the last indorser of William Prentiss's promissory note to John Agg, or order, at 60 days, from April 5, 1831, for $5,200, payable at the office of discount and deposit at Washington, indorsed by Agg and the defendant.

R. S. Coxe, for the plaintiffs, in order to prove demand and notice to the defendant, offered to prove, by Michael Nourse, a notary-public, that on the 7th of June, 1831, he called with the note at the office of discount and deposit, in Washington, and there demanded of the book-keeper, payment of the same, and was answered that there were no funds to pay the same; that on the next day he left a written notice of the non-payment of the said note, for the defendant, at the office of the National Journal, in which place he was employed as a clerk at the date of the note; and offered evidence further to prove that the defendant was clerk and book-keeper of the office at which the National Journal, a daily newspaper, was printed and published, in the city of Washington; that his room was near the front door of the office, and had bars or lattices, so that when he was not in his room, papers could be put into the room and dropped upon a table or desk; that the said notary-public had served other written notices to the defendant, by putting them into his room, in that manner, in his absence; and he believed that the notice in the present case, had been served in that manner; that the defendant's business required him to be daily at his said room; that he was not then a married man, but lived with his sister, who keeps a boarding-house, or was jointly concerned with her in keeping a boarding-house near the Journal office.

To the admissibility of which evidence the defendant's counsel (Mr. Marbury) objected.

But THE COURT overruled the objection; and the defendant took a bill of exceptions.

Mr. Marbury, for the defendant, then prayed the court, to instruct the jury "that if they believed from the evidence that after the note upon which this suit was instituted was due and payable, and after due notice given to the defendant of the non-payment thereof, the plaintiffs took the negotiable promissory note of John Agg, the payee and indorser thereof, payable at sixty days after date for value received, for the balance of principal and interest due on the said note in action without the consent of the defendant, and agreed with the said Agg to wait on said note in action in consideration of his promising to pay curtails and discounts on said new note, and to renew the same from time to time, he, the said Agg, continuing to pay such curtails and discounts until said balance and interest was paid; the said

transactions, if found and believed by the jury, constitute a legal and binding obligation on the part of the plaintiff to give time to the said Agg in the payment of the note in action, and discharges the defendant from liability on the same."

Mr. Marbury cited the case of Cope v. Huntt, [Case No. 3,206,] in this court at March term, 1833, which was an action against the indorser of Mr. Houston's note, due July 7, 1829, for $500. The defendant offered evidence of a subsequent agreement between the plaintiff and Mr. Houston that he should assign to the plaintiff ten dollars a month of his pay as a clerk in the treasury department, in payment of the note; and that the plaintiff should wait for payment in that manner; that Houston continued to make such payments according to the agreement, until April, 1831; and that this agreement was made without the knowledge of the defendant. Mr. Marbury also cited Starkie, Ev. pt. 4, p. 289. Mr. R. S. Coxe, for the defendant in that case, cited Bank of U. S. v. Hatch, 6 Pet. [31 U. S.] 250; 5 Vin. Abr. 527, pl. 17; and Bridg. Dig. Mr. Dunlop, contra, cited McLemore v. Powell, 12 Wheat. [25 U. S.] 554, 556. The court, (Morsell, Circuit Judge, contra,) on motion of the defendant's counsel, in that case, instructed the jury that such an agreement, if proved, discharged the indorser (the defendant) from his liability. The jury, however, found a verdict for the plaintiff; and the court, (Morsell, Circuit Judge, contra) granted a new trial, on the ground that the verdict was against either the law or the evidence, in the case. A new trial, however, was never had in that case, and after continuance for several years, the suit was struck off by order of the plaintiff.

In the present case, THE COURT (THRUSTON, Circuit Judge, contra) refused to give the instruction prayed by Mr. Marbury, as above. See the case of Bank of U. S. v. Abbott, in this court at May term, 1827, [Case No. 906.]

Mr. Marbury then prayed the court to instruct the jury "that if they believe, from the evidence, that after the note in action became payable, and after due notice of its non-payment to the defendant, the plaintiffs took a new note in renewal therefor from Agg, the first indorser, the right of action upon the note in suit was thereby suspended against the said Agg, and the defendant thereby discharged."

Mr. R. S. Coxe, contra, cited Pring v. Clarkson, 2 Dowl. & R. 78; Gould v. Robson, 8 East, 575; Maltby v. Carstairs, 1 Man. & R. 552.

Mr. Marbury cited Chapple v. Ashley, 1 Dowl. & R. 26.

THE COURT (nem. con., but THRUSTON, Circuit Judge, doubting) refused to give this instruction also, there being no evidence that Agg's note was taken in renewal of the note of Prentiss's, indorsed by the defendant.

Verdict for plaintiffs, a new trial was granted by consent and at March term, 1836, the plaintiff struck the suit off, by consent, without costs.